Let's go to the second case, Stapal Trail v. Lasseter. Mr. Waters? Chief Judge Pryor, Judge Rosenbaum, Judge Moore, may it please the court. My name is Jonathan Waters. I represent Len W. Lasseter, who is the landowner in this condemnation case. He is a lifelong resident of Colquitt County down in South Georgia. In fact, he's probably the largest private landowner in the county and has been engaged... Counsel? Yes, ma'am. I'm sorry to interrupt, but I have a question that really goes to the amount of the votex. Yes. My question for you is on the burden of proof here. Okay. Who has the burden of proof? Because, I mean, under federal law, it seems like you, the property owner, would have the burden of proof. And under state law, it would be stable. So my question, first of all, my question is, do you agree with that? And second of all, if so, why is it that the state law controls here on the burden? Because that's what you're basically arguing. Because the court had already decided that the measure of damages should be under state law. And we think if the measure of damage is under state law, it derives that the burden of proof should be unsable to private compensation. Do you have a case that it stands for the proposition that when the measure of damages is under state law, the burden of proof is also under state law? Or is this a situation where, because of the mechanism that is being under the Fifth Amendment right, because of that mechanism, that it's subject to a federal burden? The federal law and the burden. Do you understand what I'm saying? I'm not sure that I do. I'm arguing. Go ahead. Do you have a case that stands for the proposition that the burden, we should look at the burden under state law as opposed to under federal law? A case that stands for that proposition, that is, because you are arguing that state law applies to the measure of damages, which is what the court determined, that also the burden of proof must be under state law? I believe that Georgia courts have long found that they deny that landowners have a burden of proof on fair market value. Right. So I understand that under state law, the burden of proof would be unstable. That's how I understand the law. Under federal law, the burden of proof would be on your client. My question for you is a little bit different. I understand that the district court used the state measure of damages. Yes. But that necessarily means that the burden of proof under state law goes with it. And if so, what is your best case for that? I don't have a specific case that says that if you're using state law to determine the measure of just compensation that you also have to use state law for the burden of proof. But I believe they go hand in hand. Good. There's an answer to the question. That's good. Well, why then isn't that just a matter of just procedure where we follow the federal procedure in a federal court? Federal courts have long utilized state burdens of proof or measures in various cases depending on where the property is located. And this property is located in Georgia in Colquitt County. There's no question under Georgia law that the fact of ownership of property is given a lot of importance. I mean, even under Georgia law, Dalbert doesn't even apply for the determination of who can testify as to the value of a piece of property. The landowner does not have to be an expert to testify as to the value of their own property. Well, that's lay opinion testimony, right? Isn't that what the federal courts have said about that? Our court has said that that's lay opinion testimony and permissible. That's under a different rule. That's not expert opinion testimony. Expert opinion testimony would be subject to Dalbert. But what I'm saying is under the Georgia statute, it specifically says, and Dalbert doesn't apply. It uses the federal... Well, that may be true. Yeah. But in a case like this, when the valuation testimony comes in from a landowner, it comes in as lay opinion testimony, not as expert opinion testimony, which in federal court would be subject to Dalbert. Even a state law supplied the rule of decision. So if you had a diversity case, for example, a tort case, a product liability case, something like that, the expert opinion testimony, even though state law governs the rule of decision, the expert opinion testimony would still be subject to the federal rules, including Dalbert, right? Right. The expert opinion testimony would be. The expert Gene Etham's testimony would be subject to Dalbert. See, that's why I don't understand why the burden of proof in a federal court would follow state law. It seems to me the burden of proof would be under federal law because we're in a federal court and federal procedure governs. I follow what you're saying, but I don't agree with that in this case. So I guess the question is why? Because I think the landowner, if he can present valid evidence as to the value of his own property, then he should be allowed to present that. Otherwise, you're defeating the whole purpose. Now we're talking about two different things. We're talking about I agree with you that a landowner can can often provide lay opinion testimony about the valuation of his property. That's different from who bears the burden of proof. There was a case Glover v. Department of Transportation. This is a Georgia court decision that concluded that since a condemner must pay before taking private property for public use, the condemner has the burden of proving market value of the property taken. I think that's what the court ended up saying in this case. So I guess the question, though, is is burden of proof necessarily part of the procedure as opposed to the substance? Or can it be part of this substantive law? You know what I'm saying? It's kind of a weird type of case because it's not really a state cause of action that you're in court on. But we're using a state measure. And so it's kind of this weird little hybrid. I guess there are two different ways that the burden of proof could be subject to Georgia law. One would be if the burden of proof is considered a part of the substantive law as opposed to the procedure. The other way would be if just in these kinds of cases, right, in these kinds of amendment-taking cases, where state law is otherwise adopted, that's just how it goes. But I'm asking if there's someone who's analyzed this. Do you have any case that has analyzed this issue or any support for the proposition either that the burden of proof is part of the substantive law of takings, I guess, or that when you adopt the measure of the value, I guess, or the damages, and you adopt it for the state law as opposed to federal law, that that also imports the burden of proof standard? Do you know what I mean? I understand what you're saying. I'm not saying I have a case that says that, no. Okay, thank you. You're welcome. But the question, the greater question becomes, if you're talking about the cross-appeal and the amount, if the jury awarded a verdict, The problem I have with the cross-appeal for you is I don't understand what valuation evidence you submitted that would have supported this verdict. It seemed to me that the only valuation evidence that would support a judgment for a taking was $24,096.50, and anything above that would have been totally speculative on the part of the jury. It's my opinion, there's no question the jury can consider all the witnesses that testify. Just because a witness is testifying on behalf of Sable, or a document has been submitted on behalf of Sable, into evidence in the case, doesn't mean... Counsel, what evidence of valuation supports that verdict? Okay, Mr. Schultz testified as the expert for Sable Trail. Mr. Schultz testified, no question, he was clear, that he put on that document that the best use for that property was as a subdivision, a residential development. That's what he stated it was. The jury then took the amounts that he stated and extrapolated from those amounts the valuation, the conclusion that they came to in their jury verdict. And it was a simple calculation that they made from the evidence that existed. There was no question... Counsel, I'm sorry to interrupt, but let me ask you this, related to that question. I mean, it seems to me that what the jury was considering were Schultz's concessions that he did not account for the possibility that Lassiter wouldn't be able to construct a road and utilities over the easement, he didn't include the value of the timber taken from the permanent easement, and he didn't include any soil damage from the pipeline. And so what it seems to me like the jury did here is it just decided that that triangular area was not of any value at all if you couldn't have a road that went over it. And because of all of the problems, all of the conditions, I guess, on the easement, that it was a very real possibility that you wouldn't be able to have a road, and in any case it would be up to Sable Trail ultimately as to whether that would be. So they just decided to give him the whole value of that property. The problem is that I can't figure out how the value of that property matches up with the number that they gave under Schultz's valuation of the property. I know you said something about 1.85, and that's where I don't understand where that number came from. Because when I look at the numbers, it looks like the permanent easement was 1.28 acres, the temporary easement was 0.79 acres, and the rest of that triangular area was 4.9 acres. And the math doesn't add up to me. That's the problem that I don't understand. I think that the jury was trying to compensate for that triangle, but I don't know how they got to that number. I don't know if maybe you could shed some light on that. Well, I think there was 4.79 acres I think the jury was saying was unsuitable for use since it could not be crossed and utilized by the landowner. And that's basically what the district court said in the order denying their motion for judgment after the verdict. And you take that number, and then you – we put a chart in our – Right, I looked at the chart, but the chart uses 1.85 as the number, and I don't know where that number comes from. I don't – because the calculations don't work if you use the actual numbers of the, you know, the property in question. If you used – and I would think it would be the permanent easement plus the triangular area that would have been part of a subdivision, but for the fact that you might not be able to have a road to get there or utilities, so then it wouldn't be able to be part of the subdivision. There's no .85, 1.85 in that. I don't know what that describes. And the upside of that is that you come up with a lot – you come up with a larger number of acres that have been – than what the sum of these two areas is. That's where my confusion is. Maybe you can help me out with that. Well, the 1.85 is the total of the permanent and temporary easements for the pipeline and workspace. I don't think so, because the temporary easement was .79 acres, and 1.2 acres, which is the permanent easement, plus .79 acres is 2.07 acres. Well, maybe the best thing – you're considerably over your time. Unless you have a quick response to that, council, maybe the best thing to do is collect your thoughts and we'll hear from your opposing council. Thank you. Mr. Calvert. Yes, Your Honor. May it please the Court, Matt Calvert, Disabled Trail Transmission. With respect to the appellant's assignments of error, with respect to which Mr. Waters has made no arguments, we rely on our response brief to which no reply was filed. None of those assignments has any merit to the reasons set forth in our response brief. With respect to the issue of the burden of proof on proving just compensation, Sable Trail did take the position at the trial that the federal standard applied and that the burden of proof was on the landowner. Judge Land, as you know from the record, disagreed and instructed that Sable Trail had the burden of proof. We believe it is procedural. Yes, ma'am. I understand all of that. My question is, assuming, just for our purposes, that Judge Land's determination that state law governs the measure of damages is correct, what is the correct burden of proof, and do you have a case for that? I don't have a specific case, Your Honor, for the burden of proof being a procedural issue, even if state substantive law on just compensation controls. I do believe it is procedural in nature for reasons that you and Judge Pryor have stated in your questions, but, moreover, I don't think it matters in this case. The question still remains, was there evidence or inferences from evidence that would have supported a jury verdict on just compensation for anything other than the uncontradicted evidence of Sable Trail? And irrespective of who bore the burden of proof, the only evidence on that was the appraisal testimony of Sable Trail's jury. Well, let me ask you a question about that. Why isn't it part of the evidence when your expert conceded that the highest use for the land would be as a subdevelopment, but he conceded that he didn't account for the possibility that Lassiter wouldn't be able to construct a road and utilities over the easement, which would mean then that there couldn't be a subdevelopment, and he didn't include the value of the timber taken from the permanent easement, and he didn't include soil damage from the pipeline. Why aren't those parts of the evaluation that the jury would be entitled to consider? Three points, Your Honor. First, I would beg to differ with your recollection of Mr. Schultz's testimony. At page 50 of volume 2 of the transcript, he was specifically asked whether the inability of the landowner, if in fact the landowner was unable to cross the easement with the road, would render the property on the opposite side unusable for residential purposes, and he expressly expressed the opinion no, that would not render the property unusable for residential purposes. There are numerous residential purposes other than the construction of a house, lawns, recreation, trails, et cetera, et cetera. So plenty of large acre subdivisions have properties accompanying a dwelling that are devoted to residential use. But here's the other point, Your Honor. The value of the timber that was removed was expressly testified to by Craig Gaynett, a highly qualified timber appraiser and cruiser in South Georgia. So that valuation was added for purposes of our argument to the jury to Mr. Schultz's testimony. The other point about the road I would make is this, Your Honor. If the requirement to obtain consent from a natural gas pipeline to cross a permanent easement with either a road or a utility,  on the opposite side of the pipeline undevelopable for residential purposes, then that circumstance already existed with respect to Mr. Lasseter. Because as you can see from Plaintiff's Exhibit 22, which is an aerial view of the entire track, there's an unforested white line all the way across the property diagonally, which is associated with the Sonat natural gas pipeline. And Mr. Lasseter acknowledged he would also have had to obtain Sonat's approval. So I suggest that if that is the reason it was supposedly undevelopable for residential purposes, that circumstance already existed. The other point I would make, Your Honor, is there was no testimony in this case that soil compaction existed, and even if it did, whether that would have any bearing on the value of the property. Most of this permanent easement went through wetlands, and there's no suggestion that soil compaction would have made any difference in wetlands. Testimony was that Mr. Lasseter could not have built a house in wetlands in any event. On the issue of the acreage, the permanent easement and its meets and bounds description is described in Plaintiff's Exhibit 30, which is the plat. The right-of-way itself was 1.28 acres. The workspace 0.79 acres for a total of 2.7. So I completely agree with you that there's no basis whatsoever for this highly speculative suggestion in the landowner's response brief that somehow the jury found that 6.64 acres of property was, quote, taken. The numbers just don't add up. Even if 4.79 acres was in this triangle in the southwestern portion of the property, if you add 2.07 acres to that, you don't get 6.64. The other problem with that argument is there's absolutely no evidence to support any finding that those 6 acres or 4.79 acres were devalued, much less valueless. And the mosaic fertilizer case, which has been referenced earlier in the other argument, made clear that there was pure speculation for a landowner to testify that her property was valueless and unmarketable simply because there was an allegation of contamination associated with a nearby factory. She had no basis, no experience, no communications with real estate specialists that would have supported a valueless conclusion. So that evidence was disallowed. Likewise, it would have been purely speculative for this jury to pick a number out of thin air that that property was diminished in value, much less valueless. And that's essentially the same reasoning that Judge Land reached when he said the jury could have multiplied approximately 6 acres in that corner by Mr. Schultz's testimony of $15,500 an acre and came up with an approximation of the award. That calculation would be $93,000, and then you would have the value for the permanent easement. But that doesn't support $103,000 because it essentially assumes the property was valueless. And there was zero testimony to support that or, in fact, any diminution. And, of course, what was so remarkable about the trial judge's denial of the motion for judgment as a matter of law after the trial, having taken it under advisement during the jury instruction phase, was that it is flatly opposite to the conclusions that he reached when the evidence was fresh in his mind. He specifically said when Mr. Laster sought a jury instruction on damages to the remainder that you have put up no evidence as to how there's been any damage. He specifically admonished Mr. Laster's counsel. That doesn't necessarily mean anything. I mean, sometimes when you've had a chance to go back and think about the issues instead of, you know, having to do things right at the spur of the moment on the bench, you have a more considered view. That is not particularly compelling to me personally. Well, my response to that, Your Honor, would be all of his reasoning was correct at the time of the trial, and there was no argument of damage. And if you look at how he rationalized the possible finding by the jury of damage to the remainder, it simply doesn't mesh with the evidence. He concluded that the jury could have concluded that that corner in the property was not developable for residential purposes, and there's no evidence of that. The only evidence on point was Mr. Schultz's directly to the contrary. Even assuming you couldn't cross the easement with a utility or a road, there's simply no evidence it was not marketable. And, in fact, he had said during the jury instructions that Mr. Waters could not argue with respect to the property's value if it was not residentially developable because there was no evidentiary basis to argue. Let me ask you this, Mr. Calvert. Has anybody come up with an explanation for how the jury arrived at 103-385? Pure speculation is the only explanation. You can conjure up a theory, I suppose, as Judge Land attempted to do, but the problem is if that was the jury… Even that doesn't really add up, does it? It doesn't add up, and in any event, the predicates for that hypothesis are inconsistent with the evidence, meaning they picked a number out of thin air, which is exactly what he instructed they could not do. So, for all those reasons, we believe that the trial judge committed error in denying the motion for judgment as a matter of law, and we ask that the matter be remanded and a direction to inner judgment in the amount of Sable Trails appraisal evidence and timber evidence. No further questions, that would conclude my argument. Thank you, Mr. Calvert. Mr. Waters, you have five minutes. Mr. Waters? Is he on mute? I don't know. I hope he didn't drop off. Mr. Waters? Yes, Your Honor. First, I want to address the timber issue, because it shows the specifics of how this jury was thinking. And that is, Sable Trail had a timber expert testify at this trial. The timber expert never saw any of the trees standing on the property. He never even saw the stumps on the property. When he went out there to evaluate the timber value on this property, it had been clear cut and cleaned, and nothing was there for him to evaluate. And then he formulated out of thin air both sides of what this might have been worth, and he specifically said, I didn't put any monies in this for pole timber. And pole timber's timber that's of the highest value, it's used for telephone poles. So it's pine trees that have grown straight, and you cull them off the property first to get the highest dollar for them. The jury, obviously, and I can't get in the head of specifically what the jury was thinking, but it's clear they wanted to award to Mr. Lassiter, based on what Gaines said pole timber was worth, some amount in addition to what he had evaluated on timber he had never seen. But they had to speculate to get there. That's my problem. If I look at the record, and I'm looking for, counsel, if I look at the record, and if I look for what evidentiary basis there is or could be to support what the jury awarded, I can't find it. There's a $414 difference in the amount they awarded for the timber. And I would put to you that that is inevitable. I'll grant you that. I'll grant you on the timber it's not a big difference. But on the valuation of the easement, it's something entirely different. Well, again, it goes to the jury's purview is to evaluate the veracity of these experts and to take from the expert, whether it's our expert or Sable's expert, what their testimony actually says. Mr. Schultz testified first. He'd never even been to Colquitt County. Next he testified as to what he determined these values through a group of comparables he had had someone pull electronically. That being said, he gave amounts for acreage and he gave amounts for how much he thought the best use of this property would be a residential subdivision. He also tried to testify under Cross that you could basically do whatever you could with the property, but there's no question the evidence at trial was you were precluded from doing things on the property by the fact that the restrictions of the easement required clear prohibitions, absolutely prohibited stable trails, and at its full discretion all activities including those necessary for residential subdivision near the easement. He also testified part of the property was a wetlands. Council, what about opposing Council's position that there was another pipeline on the property anyway? Even if you couldn't make that triangle into a residential property, it wouldn't have been Sable's trails fault. Yeah, but the pipeline that was there was a 10-inch pipeline. It's not the pipeline, a 36-inch natural gas pipeline, high-pressure pipeline. It's like saying a dirt road is an interstate highway. There's a huge, huge difference between these two pipelines and the degree of the computations. They had another expert testify who was the engineer as to what you could do with this property. If Sable Trail would allow you to do permission and all these requirements as to the weight loads and things that would be restricted and what needed to be done to build this, and if you put anything over it that they didn't specifically approve, they could come in and tear it down and then replace it. I think there's no question this jury looked to that 4.7 acres that was wedged in between this wetland area and this pipeline that could not be crossed and said that property for residential development had been destroyed, and they gave that value extrapolated from the evidence that Schultz had testified as specifically per acre values on the property using the comparables that existed in the area. There's specific evidence to come to that number. It's not formulated out of thin air. Counsel, your time has expired. Thank you very much. Thank you, Mr. Waters.